UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNNY HAMILTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1311** |
| **JACK STRAIN, SHERIFF, ET AL** | **SECTION "S"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.  On May 16, 2005, the undersigned conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]  Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 4.  The plaintiff was sworn prior to testifying.  The cassette tape of the hearing is in the custody of the Court Recording Unit.

I.     **Factual Summary**

    A.     **The Complaint**

The plaintiff, Johnny Hamilton, was an inmate housed in the St. Tammany Parish Jail ("STPJ") at the time of the filing of this complaint. He filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against St. Tammany Parish Sheriff Rodney Jack Strain, Jr., Warden Marlin Peachey, Assistant Warden Gregory Longino, Dr. Batt, Dr. Campbell, and Nurse Wilbon, and the entire medical staff at the STPJ, seeking to recover damages for the alleged denial of adequate medical care for a dislocated shoulder.

Hamilton alleges that he requested medical care for his dislocated shoulder in April of 2004. He claims that he also filed complaints and still has not received relief or medical care. He states that he was never taken to an orthopedist. He claims that, as a result, his shoulder has "grown back" and healed incorrectly. He states that the medical personnel told him that there was nothing they could do. He also claims to suffer from unbearable pain at times and is taking medication to help him sleep.

Hamilton further alleges that he has been told that there is nothing for the medical unit to do for him. Consequently, he seeks proper medical attention, to have his shoulder repaired, and for the facility to pay his medical bills.

    B.     **The *Spears* Hearing**

Hamilton testified that he was arrested on April 3, 2004, for possession of narcotics. He was placed in a holding cell for eight days at the STPJ. He testified further that he notified the medical department at the jail that he had a dislocated shoulder from prior to his arrest. He stated that the nurse told him that he would eventually see a doctor but he never did.

Hamilton claimed that he later found out that the facility had no doctor on staff. The medical staff quit around May 1, 2004 and the new staff arrived on May 15, 2004. He received no medical attention until the new staff arrived. He recalled that, on one occasion, he was seen for a regular medical orientation examination. He stated that the doctor would not address his shoulder injury without doing a medical work-up.

He also testified that, on May 27, 2004, he was examined by Dr. Campbell at the prison. The doctor told him that x-rays were not needed, but instead the doctor said he would send him to the orthopedic clinic at Charity Hospital (a/k/a Medical Center of Louisiana). He complains, however, that he was never sent to the orthopedists. He stated that he saw Dr. Campbell and medical personnel at least seven times but they would not treat his shoulder. Instead, he was told to wait for his appointment at Charity. The medical staff also refused to contact his doctor from before his arrest or to get the medical records about the shoulder injury.

He stated that he was seen by Dr. Campbell on at least seven occasions at the prison, including a visit in May of 2005. He claimed that Dr. Campbell would check the range of motion of his shoulder and make another appointment referral for Charity. Hamilton testified that he has restricted motion in the shoulder. He could hold his arm up in front but he would have to push on the shoulder joint to go higher. The doctor would tell him that there was nothing he could do about appointment delay. He would give Hamilton ibuprofen or Motrin and medication to soothe his stomach. Hamilton stated that he was also taking medication to help him sleep.

Hamilton testified that he sued Sheriff Strain because he was his custodian. He also testified that he never discussed his problems with the Sheriff and had no information to indicate that the Sheriff knew of his medical problems.

Hamilton further testified that he wrote administrative grievance complaints to Major Philip Cavenay in Internal Affairs, Warden Peachey and Assistant Warden Longino about his shoulder problem and a skin infection. He stated that he did not receive responses. He indicated that he did receive one response from Warden Longino in which he was told that he used the wrong form for seeking reimbursement for some incorrectly charged medical expenses.

Hamilton also testified that he told Warden Longino in person about his medical problems. Each time, the Warden told him to see the medical department.

He also stated that he sued Nurse Wilbon because she was the supervisor over the medical department. He alleges that, as the supervisor, she should have followed-up on and coordinated his appointment with the orthopedic clinic. He also alleged that she took him off of his prescribed medication, ibuprofen, without an examination. As a result, he was without medication for a whole weekend until he could be seen by the doctor.

Hamilton testified that, at the time of the hearing, he was 41 years old and serving a three and one-half year sentence. He expected to be released on January 16, 2006.

## II. Procedural Background

On August 11, 2005, the undersigned set a Scheduling Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure for September 8, 2005.[3] In the aftermath of Hurricane Katrina, the plaintiff was relocated several times and the Court was compelled to reschedule the conference for February 7, 2006.[4]

---

[3] Rec. Doc. No. 16.

[4] Rec. Doc. No. 19, 22.

The Order was mailed by the Clerk of Court to the plaintiff at the St. Tammany Parish Jail, the last address he provided to the Court.[5] The envelope containing the order was not returned to the Court.

On February 7, 2006, counsel for the defendants was prepared to participate in the scheduled conference.[6] However, the Court was advised that Hamilton had been released from prison. Hamilton did not provide the Court with an address other than the St. Tammany Parish Jail.

The Court obtained a last known civilian address from the STPJ. The Court reset the Scheduling Conference for March 6, 2006, and instructed Hamilton to provide the Court with an address and telephone number where he could be reached for the conference.[7] The Order was mailed to the plaintiff by the Clerk of Court at both his last known civilian address of 60027 Javery Road, Slidell, Louisiana, 70460, and at the STPJ. The envelope addressed to him at the STPJ was returned to the Court marked "R[eturn] T[o] S[ender], no longer here."[8] The envelope addressed to the Slidell address has not been returned to the Court.

On March 6, 2006, the Court was unable to conduct the Scheduling Conference because plaintiff failed to provide a telephone number where he could be reached. Hamilton did not contact the Court in person or in writing to advise the Court of his current location.

---

[5]Rec. Doc. No. 22, 23.

[6]Rec. Doc. No. 24.

[7]*Id.*

[8]Rec. Doc. No. 26.

The Court thereafter issued an order on March 8, 2006, directing Hamilton to show cause why the claims raised in his § 1983 petition should not be dismissed for failure to prosecute.[9] The Order was mailed by the Clerk of Court to the plaintiff at the Slidell address. The envelope containing that Order has not been returned to the Court as undeliverable.

The plaintiff has not responded to the Court's prior orders. He has not otherwise contacted the Court regarding his case since the letter received from him on January 20, 2006 upon his return to the St. Tammany Parish Jail.[10]

### III.   Analysis

Rule 41(b) of the Federal Rules of Civil Procedure specifically provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure, or any order of the court. A Rule 41(b) dismissal is considered an adjudication on the merits. Fed. R. Civ. P. 41(b). In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, has been responsible for any delay or failure to comply with a rule or order. *See e.g. Silas v. Sears, Roebuck & Co.*, 586 F.2d 382 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706 (5th Cir. 1976). In this case, Hamilton is without counsel and is responsible for the prosecution of his case.

The record shows that the Court set Scheduling Conferences, the last two notices of which were sent to Hamilton's known civilian address address and were not returned as undeliverable. Hamilton also has not contacted the Court since January 20, 2006.

---

[9]Rec. Doc. No. 25.

[10]Rec. Doc. No. 23.

Hamilton was made aware of his obligation to keep the Court informed of his whereabouts as reflected on page six of his Complaint, where he signed the Plaintiff's Declaration on March 22, 2005. The Local Rules of this Court also require that a plaintiff provide the Court with a current address or face dismissal of the case. L.R. 41.3.1E. Hamilton has not notified the Court of an appropriate address or means of contacting him. Accordingly, dismissal of Hamilton's § 1983 complaint is proper under Fed. R. Civ. P. 41(b) for his failure to prosecute this case.

**IV.   Recommendation**

It is therefore **RECOMMENDED** that Hamilton's Title 42 U.S.C. § 1983 complaint be **DISMISSED WITH PREJUDICE** for failure to prosecute under Fed. R. Civ. P. 41(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this  9th  day of  May , 2006.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**